JUDGE HOLWELL Christopher R. Belmonte (CB-2163)
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, New York 10169
Tel.: (212) 404-8725
Attorneys for Plaintiff



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
JPMORGAN CHASE BANK, N.A.,                     :
                                               :
                    Plaintiff,                 :
                                               :
        -against-                              :
                                               :
CANDOR CONSTRUCTION GROUP, INC.,               :
And DENNIS ULVERSOY                            :
                                               :
                                               :
                                               :
                                               :
                    Defendants.                :
-----------------------------------------------------------X
```



Plaintiff, JPMorgan Chase Bank N.A., ("JPMC"), by and through its attorneys,

Satterlee Stephens Burke & Burke LLP, as and for its Complaint against defendant Candor

Construction Group, Inc. ("Candor") and Dennis Ulversoy ("Ulversoy"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract, fraudulent misrepresentation,

fraudulent inducement, conversion, unjust enrichment, and violation of a Construction fund trust

under Article 3-A of the New York Lien Law. JPMC hired Candor to perform duties as general

contractor on a number of bank branch and office construction projects located in the state of

New York. Candor in turn hired a variety of subcontractors to provide labor and materials

needed to complete the projects.

742104_1

2.      Pursuant to the general contractor agreements executed by the parties, at the request of Candor JPMC provided regular progress payments.  In order to obtain these requisition payments, Candor was required to certify that the amount of each payment was accurate and legitimately due, that previous requisition payments received by Candor were parceled out to subcontractors as necessary in order to pay any past due amounts due to subcontractors, and that upon receipt the new requisition funds would be used to pay all recently outstanding sums due to subcontractors.

3.      Unbeknownst to JPMC, on at least three locations, Candor and its management, including Ulversoy, failed to pay subcontractors from the requisition payments made by JPMC, used the funds for alternative purposes, and nonetheless continued to requisition progress payments in order to induce JPMC to provide more funds.  As a result, subcontractors filed a substantial number of liens against the various JPMC projects that Candor hired them for, and to date JPMC estimates that it will have to pay more than 1.2 million dollars above the contract amounts agreed to with Candor in order to resolve the subcontractor liens and past due invoices.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a) and (c) because plaintiff and defendant are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest, and principles of pendent jurisdiction.

5.      Venue lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## THE PARTIES

6.      JPMC is a national banking association with its main office at 111 Polaris Parkway, Columbus, Ohio 43271, with its principal place of business in New York at 270 Park Avenue, New York, New York 10017.  JPMC was formerly known as The Chase Manhattan Bank.

7.      Candor is a corporation organized and existing under the laws of the State of New Jersey, with its principle place of business at 241 Molnar Drive, Elmwood Park, NJ 07407, that is also registered with the New York Department of State and, upon information and belief, is authorized to conducted business in the State of New York.  As referenced in the proceeding paragraphs, Candor conducted business with JPMC in the State of New York.

8.      Dennis Ulversoy is the principal, director, and President of Candor and, upon information and belief, is a citizen of the State of New Jersey residing at 114 Cedar Lake East, Denville New Jersey, who conducted business with JPMC in the State of New York.

## FACTS

9.      JPMC hired Candor as general contractor to perform construction projects at multiple branch and office locations.  For each location, the parties entered into a general contractor agreement.  The following list summarizes the locations and date of the general contractor agreement for the locations relevant to this action (collectively, the "Candor Sites"):

> i. On February 20, 2007, the parties executed a general contractor agreement for the construction project located on 777 Pulaski Road, Greenlawn, New York ("Greenlawn").

3

ii.  On March 26, 2007, the parties executed a general contractor agreement for the construction project located on 2368 Central Park Ave., Yonkers, New York ("Yonkers").

iii.  On June 1, 2006, the parties executed a general contractor agreement for the construction project located on 165 Water Street, New York ("Water Street").

10.  The general contractor agreement in place for each of the Candor sites provided for the payment of the total contract price to Candor by way of separate progress requisition payments made at intermittent stages of construction.  The requisition process established by the agreements required Candor to submit an Application for Payment for each progress payment made.

11.  The Application for Payment included a certification by Candor, executed by Ulversoy, that the "[w]ork covered by [the] Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner [JPMC], and that current payment herein is now due." The Application for Payment also included a schedule reflecting the amount of work that was completed and outstanding for each Candor Site.

12.  In connection with its Application for Payment, Candor was also required to provide an Interim Lien Release.  On the Interim Lien Release, executed by Ulversoy, Candor certified and warranted that "all bills for labor, materials, licenses and other expenses for which Owner might be liable or for which a lien might be filed by a Subcontractor or any tier retained

4

directly or indirectly by Contractor to furnish labor or materials for work covered under said Requisition will be fully satisfied and paid promptly after contractor's receipt of payment."

13.    Under the general contractor agreements, the failure to pay subcontractors and the filing of liens by subcontractors as a result of that failure constituted cause for contract termination and the withholding of further payments by JPMC to Candor.

14.    Upon information and belief, starting in the Fall of 2007, Candor began to use requisition funds for purposes unrelated to the payment of labor and materials supplied for the Candor Sites, and knowingly continued to certify that the funds provided by JPMC would, upon receipt, be appropriately distributed to subcontractors as necessary.

15.    JPMC relied on the truthfulness of Candor's representations that progress payments were being paid to subcontractors as payment for materials and services rendered on the Candor Sites, and only continued to make progress payments to Candor because of those representations.

16.    Candor's failure to pay subcontractors resulted in a substantial number of the subcontractors suspending work at, and filing liens against, the Candor Sites.  On or about February of 2008, JPMC alerted Candor as to the fact that subcontractors had filed liens and warned that failure by Candor to address and remedy all subcontractor liens would result in termination of the general contractor agreements.  Candor did not address any of the liens filed or outstanding invoices prepared by its subcontractors.

17.    Therefore, JPMC terminated for cause the general contractor agreements for each of the Candor Sites, withheld further payments to Candor, and made exhaustive efforts to engage in pre-litigation dispute resolution procedures dictated by the general contractor agreements.  These efforts have been wholly and entirely ignored and waived by Candor.

18.    As a result of Candor's diversion of requisition funds and failure to pay subcontractors, a substantial number of construction liens have been filed against the Candor Sites.

19.    In the case of Candor Sites which JPMC leases from third parties, JPMC has been forced to file a number of surety bonds and to indemnify and hold harmless the landlord in order to meet its lease obligations. In addition, JPMC has had to address foreclosure proceedings initiated by subcontractors seeking to foreclose on their liens.

20.    To resolve the lien issues created by Candor's wrongful conduct, complete the affected projects, and protect JPMC business reputation and goodwill among subcontractors, property lessors, and its bank customers, JPMC has been forced to pay the outstanding lien amounts and invoices claimed by individual subcontractors. As Candor has not provided a full and complete accounting, despite due demand from JPMC, of all the subcontractors who worked on the Candor Sites and the amounts outstanding to them, the full scope of Candor's failure to pay, and the full amount required by JPMC in order to complete all of the Candor Sites cannot yet be finally determined. Based on information received from unpaid subcontractors, JPMC estimates that the increased cost of completion of the projects, above and beyond the specified contract prices, will exceed 1.2 million.

21.    In exchange for payment of the lien amounts, all subcontractors receiving payment have assigned the entirety of their existing claims against Candor and its directors to JPMC.

22.    The claims assigned include claims against Candor's directors under the New York lien law.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT AGAINST CANDOR (GREENLAWN)

23.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

24.    Pursuant to the Greenlawn contractor agreement and all of its supporting and incorporated documents, Candor was required to make timely payments due to the subcontractors from the progress payments made by JPMC, and provide JPMC with timely access to Candor's books and records for the project.

25.    In breach of the agreement, Candor failed to make the required payments to subcontractors from JPMC's progress payments, caused subcontractors to suspend work at, and/or to file liens against, the Greenlawn project, and has withheld the project's records from JPMC's review.

26.    As a result of Candor's breach of contract, JPMC suffered consequential and compensatory damages (including damages for lost profits incurred as a result of construction delays and costs directly attributable to Candor's breach) in an amount not presently determined but estimated to be above $400,000.

## AS AND FOR A SECOND CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT AGAINST CANDOR (YONKERS)

27.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

28.    Pursuant to the Yonkers contractor agreement and all of its supporting and incorporated documents, Candor was required to make timely payments due to the

7

subcontractors from the progress payments made by JPMC, and provide JPMC with timely access to Candor's books and records for the project.

29.    In breach of the agreement, Candor failed to make the required payments to subcontractors from JPMC's progress payments, caused subcontractors to suspend work at, and/or to file liens against, the Yonkers project, and has withheld the project's records from JPMC's review.

30.    As a result of Candor's breach of contract, JPMC suffered consequential and compensatory damages (including damages for lost profits incurred as a result of construction delays and costs directly attributable to Candor's breach) in an amount not presently determined but estimated to be more than $800,000.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### FOR BREACH OF CONTRACT AGAINST CANDOR (WATER STREET)

31.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

32.    Pursuant to the Water Street contractor agreement and all of its supporting and incorporated documents, Candor was required to make timely payments due to the subcontractors from the progress payments made by JPMC, and provide JPMC with timely access to Candor's books and records for the project.

33.    In breach of the agreement, Candor failed to make the required payments to subcontractors from JPMC's progress payments, caused subcontractors to suspend work at, and/or to file liens against, the Water Street project, and has withheld the project's records from JPMC's review.

34.    As a result of Candor's breach of contract, JPMC suffered consequential and compensatory damages (including damages for lost profits incurred as a result of construction delays and costs directly attributable to Candor's breach) in an amount not presently determined.

**AS AND FOR A FOURTH CLAIM FOR RELIEF
FOR FRAUDULENT MISREPRESENTATION AND
FRAUDULENT INDUCEMENT AGAINST CANDOR AND ULVERSOY
(GREENLAWN)**

35.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

36.    In connection with the Greenlawn general contractor agreement and all of its supporting and incorporated documents, Candor by Ulversoy certified that "[w]ork covered by [the] Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner [JPMC], and that current payment herein is now due."

37.    Further, Candor and Ulversoy certified and warranted that "all bills for labor, materials, licenses and other expenses for which owner might be liable or for which a lien might be filed by and Subcontractor or any tier retained directly or indirectly by Contractor to furnish labor or materials for work covered under said Requisition will be fully satisfied and paid promptly after contractor's receipt of payment."

38.    JPMC relied upon these certifications and only made progress payments to Candor upon the representation and warranting that the funds received by Candor would be

paid out to all subcontractors that performed work covered by Candor's Application for Payment.  Candor and Ulversoy knew that JPMC would rely on the representations as to payments to subcontractors in accepting Candor's Applications for Payment.

39.    Candor did not transit funds to subcontractors as represented to JPMC and used the progress payments provided by JPMC for purposes unrelated to the payment of funds outstanding to subcontractors on the Greenlawn site.

40.    Candor and Ulversoy intentionally made the representations found in paragraphs 36 and 37 of this Complaint, despite knowing that the progress payments made by JPMC were being used for other purposes, in order to induce JPMC to continue to provide progress payments.

41.    Upon information and belief, JPMC paid at least $100,000 to Candor in reliance on its false representations and false certifications concerning its payments to subcontractors.

42.    As a result of the fraudulent misrepresentations and fraudulent inducement, JPMC suffered damages equal to an amount presently undetermined but that is no less than $100,000.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### FOR FRAUDULENT MISREPRESENTATION AND FRAUDULENT INDUCEMENT
### AGAINST CANDOR AND ULVERSOY (YONKERS)

43.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

44.    In connection with the Yonkers general contractor agreement and all of its supporting and incorporated documents, Candor by Ulversoy certified that "[w]ork covered

10

by [the] Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner [JPMC], and that current payment herein is now due."

46. Further, Candor and Ulversoy certified and warranted that "all bills for labor, materials, licenses and other expenses for which owner might be liable or for which a lien might be filed by and Subcontractor or any tier retained directly or indirectly by Contractor to furnish labor or materials for work covered under said Requisition will be fully satisfied and paid promptly after contractor's receipt of payment."

46. JPMC relied upon these certifications and only made progress payments to Candor upon the representation and warranting that the funds received by Candor would be paid out to all subcontractors that performed work covered by Candor's Application for Payment. Candor and Ulversoy knew that JPMC would rely on the representations as to payments to subcontractors in accepting Candor's Applications for Payment.

47. Candor did not transmit funds to subcontractors as represented to JPMC and used the progress payments provided by JPMC for purposes unrelated to the payment of funds outstanding to subcontractors on the Yonkers site.

48. Candor and Ulversoy intentionally made the representations found in paragraphs 44 and 45 of this Complaint, despite knowing that the progress payments made by JPMC were being used for other purposes, in order to induce JPMC to continue to provide progress payments.

49. Upon information and belief, JPMC paid at least $200,000 to Candor in reliance on its false representations and false certifications concerning its payments to subcontractors.

50. As a result of these fraudulent misrepresentations and fraudulent inducement, JPMC suffered damages equal to an amount presently undetermined but that is no less than $200,000.

**AS AND FOR A SIXTH CLAIM FOR RELIEF
FOR FRAUDULENT MISREPRESENTATION AND
FRAUDULENT INDUCEMENT AGAINST
CANDOR AND ULVERSOY (WATER STREET)**

51. JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

52. In connection with the Water Street general contractor agreement and all of its supporting and incorporated documents, Candor by Ulversoy certified that "[w]ork covered by [the] Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner [JPMC], and that current payment herein is now due."

53. Further, Candor and Ulversoy certified and warranted that "all bills for labor, materials, licenses and other expenses for which owner might be liable or for which a lien might be filed by and Subcontractor or any tier retained directly or indirectly by Contractor to furnish labor or materials for work covered under said Requisition will be fully satisfied and paid promptly after contractor's receipt of payment."

54. JPMC relied upon these certifications and only made progress payments to Candor upon the representation and warranting that the funds received by Candor would be

12

paid out to all subcontractors that performed work covered by Candor's Application for Payment. Candor and Ulversoy knew that JPMC would rely on the representations as to payments to subcontractors in accepting Candor's Applications for Payment.

55.    Candor did not transmit funds to subcontractors as represented to JPMC and used the progress payments provided by JPMC for purposes unrelated to the payment of funds outstanding to subcontractors on the Water Street site.

56.    Candor and Ulversoy intentionally made the representations found in paragraphs 52 and 53 of this Complaint, despite knowing that the progress payments made by JPMC were being used for other purposes, in order to induce JPMC to continue to provide progress payments.

57.    Upon information and belief, JPMC paid at least $100,000 to Candor in reliance on its false representations and false certifications concerning its payments to subcontractors.

58.    As a result of the fraudulent misrepresentations and fraudulent inducement, JPMC suffered damages equal to an amount presently undetermined but that is no less than $100,000.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
### FOR CONVERSION AGAINST CANDOR AND ULVERSOY (GREENLAWN)

59.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

60.    Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

742104_1

61.     Upon information and belief Ulversoy directed Candor to use $100,000 in progress payments provided by JPMC for purposes unrelated to the Greenlawn project and did not satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

62.     Candor and Ulversoy used the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

63.     With respect to payments forwarded to Candor that should have been paid to subcontractors, Defendants' use of the funds constituted the unauthorized exercise of ownership rights over the funds, to the benefit of Defendants, and compromised JPMC ownership rights with respect to the funds.

64.     As a result of Defendants' conversion funds, JPMC suffered damages in an amount not presently determined but estimated to be more than $100,000 and has no plain, full, and adequate remedy at law.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
## FOR CONVERSION AGAINST CANDOR AND ULVERSOY (YONKERS)

65.     JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

66.     Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

67.     Upon information and belief Ulversoy directed Candor to use $200,000 in progress payments provided by JPMC for purposes unrelated to the Yonkers project and did not

satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

68.    Candor and Ulversoy used the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

69.    With respect to payments forwarded to Candor that should have been paid to subcontractors, Defendants' use of the funds constituted the unauthorized exercise of ownership rights over the funds, to the benefit of Defendants, and compromised JPMC ownership rights with respect to the funds.

70.    As a result of Defendants' conversion funds, JPMC suffered damages in an amount not presently determined but estimated to be more than $200,000 and has no plain, full, and adequate remedy at law.

### AS AND FOR A NINTH CLAIM FOR RELIEF
### FOR CONVERSION AGAINST CANDOR AND ULVERSOY(WATER STREET)

71.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

72.    Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

73.    Upon information and belief Ulversoy directed Candor to use $100,000 in progress payments provided by JPMC for purposes unrelated to the Water Street project and did not satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

742104_1

74.    Candor and Ulversoy used the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

75.    With respect to payments forwarded to Candor that should have been paid to subcontractors, Defendants' use of the funds constituted the unauthorized exercise of ownership rights over the funds, to the benefit of Defendants, and compromised JPMC ownership rights with respect to the funds.

76.    As a result of Defendants' conversion funds, JPMC suffered damages in an amount not presently determined but estimated to be more than $100,000 and has no plain, full, and adequate remedy at law.

## AS AND FOR A TENTH CLAIM FOR RELIEF
## FOR UNJUST ENRICHMENT AGAINST CANDOR AND ULVERSOY
## (GREENLAWN)

77.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

78.    Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using   for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

79.    Upon information and belief Ulversoy directed Candor to use $100,000 in progress payments provided by JPMC for purposes unrelated to the Greenlawn project and did not satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

80.    Defendants used and materially benefited from the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

16

742104_1

81.    Since JPMC provided the progress payments with the reasonable expectation that they would be paid to subcontractors in order to satisfy any amounts due, and Defendants diverted the funds for other purposes without justification, it would be inequitable for Defendants to be allowed to retain the benefit of the progress payments made by JPMC.

82.    As a result of Defendants' unjust enrichment, JPMC suffered damages in an amount not presently determined but estimated to be more than $100,000 and has no plain, full, and adequate remedy at law.

### AS AND FOR A ELEVENTH CLAIM FOR RELIEF
### FOR UNJUST ENRICHMENT AGAINST CANDOR AND ULVERSOY (YONKERS)

83.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

84.    Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

85.    Upon information and belief Ulversoy directed Candor to use $200,000 in progress payments provided by JPMC for purposes unrelated to the Yonkers project and did not satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

86.    Defendants used and materially benefited from the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

87.    Since JPMC provided the progress payments with the reasonable expectation that they would be paid to subcontractors in order to satisfy any amounts due, and

Defendants diverted the funds for other purposes without justification, it would be inequitable for Defendants to be allowed to retain the benefit of the progress payments made by JPMC.

88.     As a result of Defendants' unjust enrichment, JPMC suffered damages in an amount not presently determined but estimated to be more than $200,000 and has no plain, full, and adequate remedy at law.

**AS AND FOR A TWELFTH CLAIM FOR RELIEF**
**FOR UNJUST ENRICHMENT AGAINST CANDOR AND ULVERSOY**
**(WATER STREET)**

89.     JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

90.     Pursuant to general contractor agreement for the property and all of its supporting and incorporated documents, Candor received progress payments which it was prohibited from using for purposes unrelated to the payment of sums outstanding to subcontractors until the entirety of any amounts outstanding to subcontractors were paid.

91.     Upon information and belief Ulversoy directed Candor to use $100,000 in progress payments provided by JPMC for purposes unrelated to the Water Street project and did not satisfy outstanding invoices provided by subcontractors despite the fact that the payments were issued specifically for that purpose.

92.     Defendants used and materially benefited from the funds in this manner without justification, privilege, or any authorization, express or implied, from JPMC.

93.     Since JPMC provided the progress payments with the reasonable expectation that they would be paid to subcontractors in order to satisfy any amounts due, and Defendants diverted the funds for other purposes without justification, it would be inequitable for Defendants to be allowed to retain the benefit of the progress payments made by JPMC

18

94.    As a result of Candor's unjust enrichment, JPMC suffered damages in an amount not presently determined but estimated to be more than $100,000 and has no plain, full, and adequate remedy at law.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF AGAINST CANDOR AND ULVERSOY, FOR VIOLATION OF A CONSTRUCTION TRUST ESTABLISHED UNDER THE NEW YORK LIEN LAW (YONKERS)

95.    JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

96.    JPMC made progress payments to Candor pursuant to a general contractor agreement which contemplated that some or all of the amounts paid would be paid to subcontractors to satisfy outstanding invoices for labor and supplies furnished for the Yonkers project.

97.    Upon receipt by Candor, under Article 3A of the New York lien law these payments constituted trust funds to be administered by Candor and its officers as trustees.

98.    Upon information and belief, at the direction of Ulversoy, Candor diverted trust funds for purposes unrelated to the Yonkers site.

99.    Defendants' diversion of trust assets constitutes a violation of the New York lien law (New York Lien Law §§ 72, 77, 79-a) for which Candor and Ulversoy, as President of Candor, are liable (New York Lien Law §§ 72, 77, 79-a).

100.    For good and valuable consideration, a number of subcontractors harmed by Candor and Ulversoy's diversion of trust assets, listed on the attached Schedule A, assigned the entirety of their claims against Candor and its officers related to the provision of labor and materials for the Yonkers project, to JPMC.

19

101. Due to Candor's failure to make timely payments to the above subcontractors, the subcontractors have suffered damages in an amount not presently known but that will be established at trial.

### AS AND FOR THE FOURTEENTH CLAIM FOR RELIEF AGAINST CANDOR, FOR BREACH OF CONTRACT AS TO SUBCONTRACTORS THAT HAVE ASSIGNED THIER CLAIMS TO JPMC (YONKERS)

102. JPMC repeats and realleges each and every allegation heretofore made in paragraphs 1 through 22 of the complaint as if fully set forth herein.

103. JPMC made progress payments to Candor pursuant to a general contractor agreement which contemplated that some or all of the amounts paid would be paid to subcontractors to satisfy outstanding invoices for labor and supplies furnished for the Yonkers project.

104. The subcontractors listed on the attached Schedule A entered into agreements with Candor for the provision of labor and materials in connection with the construction of the Yonkers project.

105. Upon information and belief, Candor violated those agreements by diverting funds paid by JPMC to Candor for the purpose of paying outstanding invoices owed by Candor to the subcontractors and failing to pay the subcontractors.

106. For good and valuable consideration, the subcontractors listed on the attached Schedule A assigned the entirety of their claims against Candor and its officers related to the provision of labor and materials for the Yonkers project, to JPMC.

107. Due to Candor's failure to make timely payments to the above subcontractors, the subcontractors have suffered breach of contract damages in an amount not presently known but that will be established at trial.

742104_1

WHEREFORE, JPMC demands that judgment be entered in its favor and against defendants as follows:

a.  On the first three causes of action, for breach of contract of the general contractor agreements in place at each of the Candor Sites, JPMC prays for three individual and separate judgments in amounts not presently determined but estimated to be more than $1.2 million, and for punitive damages of at least $1 million;

b.  On the fourth, fifth, and sixth causes of action, for fraudulent misrepresentation and inducement, JPMC prays for three individual and separate judgments equal to amounts presently undetermined but estimated to be more than $400,000, and for punitive damages of at least $1 million dollars;

c.  On the seventh, eighth, and ninth causes of action, for conversion, JPMC prays for three individual and separate judgments equal to amounts presently undetermined but estimated to be more than $400,000;

d.  On the tenth, eleventh, and twelfth causes of action, for unjust enrichment, JPMC prays for three individual and separate judgments equal to amounts presently undetermined but estimated to be more than $400,000;

e.  On the thirteenth cause of action, for construction trust violations, JPMC prays for judgment equal to an amount presently undetermined and to be determined at trial;

f.  On the fourteenth cause of action, on Yonkers breach of contract claims assigned by contractors to JPMC, JPMC prays for judgment equal to an amount presently undetermined and to be determined at trial; and

g.  Awarding JPMC such other and further relief as this Court deems just and proper, including the voidance of any lien filed by Candor against any of the projects, and an order mandating Candor to provide the documents and records they are required to provide to JPMC under the respective general contractor agreements.

//
//
//
//
//
//

Dated: New York, New York
     July **28**, 2008

                                          SATTERLEE STEPHENS BURKE
                                          & BURKE LLP

                                          By:_____
                                                  Christopher R. Belmonte (CB-2163)
                                              A Member of the Firm
                                        230 Park Avenue
                                        New York, New York 10169
                                        Tel.:  (212) 404-8725
                                        Attorneys for Plaintiff

742104_1

# SCHEDULE A

| |
|---|
| Rossini Excavating |
| Tancora, Inc. |
| Ridgway Corp. |
| Coffey Bros. Inc. |
| Pecker Iron Works, LLC |
| Kaback Enterprises, Inc. |
| Archetype Construction Corp. |
| MCI Interiors, Inc. |
| Architectural Hardware, Inc. |
| Sherry Mica Products, Inc. |
| Parkview Plumbing, Inc. |